**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **LYDA SWINERTON BUILDERS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:12-cv-1759** |
| | § | |
| **OKLAHOMA SURETY COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT OKLAHOMA SURETY COMPANY'S MOTION FOR JUDGMENT ON
PARTIAL FINDINGS REGARDING PLAINTIFF'S CHAPTER 541 CLAIM**

**PURSUANT TO LOCAL RULE 7.5.A ORAL ARGUMENT REQUESTED**

**R. BRENT COOPER**
Texas Bar No. 04783250
SDTX Bar No. 18271
brent.cooper@cooperscully.com
**DIANA L. FAUST**
Texas Bar No. 00793717
SDTX Bar No. 619603
diana.faust@cooperscully.com

**COOPER & SCULLY, P.C.**
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Tel: (214) 712-9500
Fax: (214) 712-9540

**COUNSEL FOR DEFENDANT
OKLAHOMA SURETY COMPANY**

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS......................................................................................... i

TABLE OF AUTHORITIES ................................................................................ iii

NATURE AND STAGE OF THE PROCEEDING.........................................................1

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ...........................................2

SUMMARY OF THE ARGUMENT .................................................................................3

ARGUMENTS AND AUTHORITIES.................................................................................5

I.      Judgment in OSC's Favor is Required Where the Evidence is Insufficient to
        Support LSB's Claim of Violation of, or Knowing Violation of, Chapter 541 of
        the Texas Insurance Code ...............................................................................5

        A.      Rule 52 Standards .................................................................................5

        B.      LSB's Alleged Violations of Chapter 541 ...............................................5

        C.      Governing Texas Law ...........................................................................6

        D.      Weighing the Evidence, LSB Failed to Prove, by a Preponderance of the
                Evidence, A Violation of, or a Knowing Violation of, Chapter 541 ................8

                1.      A Review of the Evidence .............................................................9

                        a.      Mr. Keith Nye: Contractual Liability Exclusion Was the
                                Primary Reason OSC Denied LSB's Tender of Defense and
                                OSC Had a Reasonable Basis for its Denials.................................9

                        b.      OSC's Expert Mr. Huddleston: It Was Not Unreasonable
                                for OSC to Deny a Defense Based on Contractual Liability
                                Exclusion Interpretations by Texas Courts ..................................16

                        c.      John    Capener:   Disagreed   with   OSC's   Coverage
                                Determinations.........................................................................18

                2.      Insufficient Evidence OSC Violated or Knowingly Violated
                        Chapter 541 ................................................................................19

        E.      Conclusion ..........................................................................................23

II.     OSC Objects to LSB's Entitlement to Supplemental Attorney's Fees for Appeal............24

PRAYER..............................................................................................................24

CERTIFICATE OF SERVICE ......................................................................................................26

## TABLE OF AUTHORITIES

**Case**                                                     **Page(s)**

*Amoco Production Co. v. Texas Meridian Res. Expl., Inc.*,
 180 F.3d 554 (5th Cir. 1999) .......................................................................................... 24

*Bursztajn v. United States*,
 367 F.3d 485 (5th Cir.2004) ............................................................................................. 3

*Crownover v. Mid-Continent Cas. Co.*,
 2011 WL 13121358 (N.D. Tex. Jan. 13, 2011), *aff'd*, 757 F.3d 200 (5th Cir. 2014), *opinion withdrawn and superseded on reh'g*, 772 F.3d 197 (5th Cir. 2014), *and rev'd and remanded*,
 772 F.3d 197 (5th Cir. 2014) ...................................................................................... 13, 14

*Emmert v. Progressive Cnty. Mut. Ins. Co.*,
 882 S.W.2d 32 (Tex. App.—Tyler 1994, writ denied) ................................................... 8

*Ewing Const. Co., Inc. v. Amerisure Ins. Co.*,
 814 F. Supp. 2d 739, 741 (S.D. Tex. 2011), *aff'd in part*, 684 F.3d 512, *opinion withdrawn and superseded*, 690 F.3d 628 (5th Cir. 2012), *certified question accepted* (Aug. 24, 2012), *certified question answered*, 420 S.W.3d 30 (Tex. 2014) ................................................ 11, 14, 16

*Fairchild v. All American Check Cashing, Inc.*,
 815 F.3d 959 (5th Cir. 2016) ........................................................................................... 5

*Geddes v. Northwest Mo. State Univ.*,
 49 F.3d 426 (8th Cir. 1995) .............................................................................................. 5

*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*,
 327 S.W.3d 118 (Tex. 2010) ..................................................................................... 11, 16

*Higginbotham v. State Farm Mut Auto Ins Co.*,
 103 F.3d 456 (5th Cir. 1997) ........................................................................................... 8

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*,
 739 F.3d 848 (5th Cir. 2014) ................................................................................... 7, 8, 20

*League of United Latin American Citizens # 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*,
 123 F.3d 843 (5th Cir.1997) ............................................................................................. 5

*Lee v. Catlin Specialty Ins Co.*,
 766 F.Supp. 2d 812 (S.D. Tex 2011) ............................................................................... 8

*Lyda Swinerton Builders, Inc. v. Oklahoma Surety Company*,
  903 F.3d 435 (5th Cir. 2018) ................................................................... 2

*Republic Ins. Co. v. Stoker*,
  903 S.W.3d 338, 340 (Tex. 1995) (Tex. 1995) ................................... 8, 19

*State Farm Lloyds, Inc. v. Polasek*,
  847 S.W.2d 279 (Tex. App.—San Antonio 1992, writ denied) .................. 8

*Tex. Mut. Ins. Co. v. Ruttiger*,
  381 S.W.3d 430 (Tex. 2012) ......................................................... 7, 8, 22

*Thompson v. Zurich Am. Ins. Co.*,
  2010 WL 3784204 (W.D. Tex. Sept. 21, 2010) ..................................... 22

*Transp Ins Co Moriel*,
  879 S.W.2d 10 (Tex. 1994) ............................................................... 7, 21

*Viles v. Sec. Nat'l Ins. Co.*,
  788 S.W.2d 566 (Tex. 1990) ................................................................... 8

## Statutes                                                            Page(s)

TEX. INS. CODE § 541.002(1) ........................................................................ 7

TEX. INS. CODE § 541.060(a)(1) ........................................ 2, 3, 6, 7, 22, 23, 24

TEX. INS. CODE § 541.061 ................................................ 2, 3, 6, 7, 22, 23, 24

TEX. INS. CODE § 541.152(b) ........................................................................ 7

## Rules                                                               Page(s)

FED. R. CIV. P. 52(a) ................................................................................... 5

FED. R. CIV. P. 52(a)(6) ............................................................................... 3

FED. R. CIV. P. 52(c) ................................................................................... 5

Defendant Oklahoma Surety Company ("OSC" or "Defendant) hereby submits its Rule 52(c) Motion for Judgment on Partial Findings Regarding Plaintiff's Chapter 541 Claim and its Brief in support of same, as requested by this Court's March 5, 2019 Minute Entry.  Defendant urges this Court to render judgment in its favor based on Plaintiff's failure of proof and lack of evidence of any actionable violation or knowing violation of Chapter 541 of the Texas Insurance Code.  Defendant further generally objects to any award of supplemental attorney's fees for appeal and reserves its right to respond to LSB's anticipated request for supplemental attorney's fees from the appeal.

## NATURE AND STAGE OF THE PROCEEDING

On July 6, 2015, this Court conducted a bench trial addressing Lyda Swinerton Builders, Inc.'s ("LSB's") claim against OSC for alleged violation of Chapter 541 of the Texas Insurance Code.[1]  At the conclusion of the parties' presentations, this Court signed and entered findings of fact and conclusions of law (Dkt. 492).  Therein, this Court followed then-existing precedent and dismissed LSB's Chapter 541 claim for failure to present evidence of an independent injury. (*Id.*).  Accordingly, the Court signed and entered an Amended Final Judgment (Dkt. 518) rendering judgment in OSC's favor on LSB's Chapter 541 claim.  (*Id.*).  OSC appealed from other portions of the Amended Final Judgment rendering judgment against it to the Fifth Circuit Court of Appeals, and LSB cross-appealed the Court's determination on the Chapter 541 claim. (Dkt. 524).

On appeal, the Fifth Circuit reversed, among other things, that part of the Amended Final Judgment rendered in favor of OSC on LSB's Chapter 541 claim, and remanded that claim back

---

[1]      References to the Appendix supporting this motion will be: (App.-[tab #]:[page#]).  For this Court's reference, the Appendix numbering appears at the bottom left side of the page.  Plaintiff's Trial Exhibits listing is found at Dkt. 547 and Defendant's Trial Exhibit listing is found at Dkt. 548.

to this Court for further proceedings. *Lyda Swinerton Builders, Inc. v. Oklahoma Surety Company*, 903 F.3d 435, 453 (5th Cir. 2018). (App.-2:256-285).

The parties have agreed that all the evidence bearing on LSB's Chapter 541 claim has been presented to the Court during the July 6, 2015 bench trial and that two issues remain:  (1) whether there was a violation of Chapter 541 and (2) supplemental attorney's fees for the appeal. Thus, OSC presents this Motion for Judgment on Partial Findings, pursuant to Rule 52(c) of the Federal Rules of Civil Procedure and its Brief in Support, urging this Court to render judgment in its favor and against LSB on LSB's Chapter 541 claim, because LSB failed to establish any actionable violation or knowing violation of Chapter 541. OSC also generally objects to LSB's entitlement to any supplemental attorney's fees from the appeal.

<u>STATEMENT OF THE ISSUES AND STANDARD OF REVIEW</u>

The following issue is presented within OSC's motion:

1.     Whether OSC is entitled to Judgment on Partial Findings, pursuant to Rule 52(c) of the Federal Rules of Civil Procedure, regarding OSC's alleged violation of Chapter 541 of the Texas Insurance Code.  This issue includes the following sub-issues:

a.     Whether OSC had a reasonable basis for denial of LSB's claim;

b.     Whether OSC's denial of defense and coverage based on its policy's contractual liability exclusion, Exclusion 2.b. constituted a misrepresentation of its insurance policy under Sections 541.060(a)(1) or 541.061 of the Texas Insurance Code by:

(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

(2) making an untrue statement of material fact;

(3) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(4) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(5) making a material misstatement of law; or

(6) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of the Texas Insurance Code.

c.      Whether LSB presented evidence sufficient, under a preponderance of the evidence standard, to support judgment against OSC regarding any "knowing" misrepresentation of its insurance policy, in violation of Section 541.060(a)(1) or Section 541.061 of the Texas Insurance Code.

When considering a district court's ruling under Rule 52(c), a reviewing court reviews the district court's legal conclusions de novo and its factual findings for clear error.  *Bursztajn v. United States*, 367 F.3d 485, 488–89 (5th Cir.2004).  The reviewing court must give due regard to the district court's opportunity to judge the witnesses' credibility.  FED. R. CIV. P. 52(a)(6).

## SUMMARY OF THE ARGUMENT

Judgment in OSC's favor on LSB's Chapter 541 claim is required where there is no evidence or insufficient evidence to support any finding of a violation of or a knowing violation of Section 541.060(a)(1) or Section 541.061 of the Texas Insurance Code.

Texas law does not impose statutory penalties on an insurer found to have been wrong about coverage, so long as the insurer has a reasonable basis for denying the insured's claim. The evidence here is of a reasonable dispute about coverage, which Texas law makes clear is not a bad faith misrepresentation or statutory violation.

The record demonstrates that the then-evolving law interpreting the contractual liability exclusion, Exclusion 2.b. of OSC's Commercial General Liability Policy, served as the primary basis for OSC's policy obligation decisions.  At the time of each of the three denial letters, Texas

law supported that, under similar circumstances, the contractual liability exclusion precluded coverage and the duty to defend.  As a result, at the time each of the denial letters were sent, in relying on the contractual liability exclusion, Exclusion 2.b., OSC made no misrepresentation to LSB of any material fact or policy provision, made no untrue statements of fact or law regarding its policy or its policy obligations, made no material misstatement of law, made no omission of material facts, and made no statement in a manner to mislead a reasonably prudent person like LSB to a false conclusion about OSC's policy obligations.

Examining the facts known to OSC at the time of the denials, OSC understood that Texas law interpreting its Exclusion 2.b. would preclude coverage in this case, where Willis' obligation to LSB and to rectify the damages arose from the contract that Willis had, and but for that contract, Willis would not be involved.  Based on the law and the information before OSC, the subcontract between LSB and Willis was an "insured contract" only insofar as Willis was concerned; it was not an "insured contract" for LSB.  Based on OSC's understanding of Texas law at the time it issued its denials, the existence of an "insured contract" would not preclude reliance on Exclusion b. to deny a defense to LSB in the Underlying Lawsuit.  And, based on OSC's understanding of Texas law at the time it issued its denials, the inclusion of negligence claims within the Underlying Lawsuit would not trigger an exception to Exclusion b.  Further, the record fails to demonstrate any evidence of a "knowing" misrepresentation constituting a violation of Chapter 541. As a result, this Court should grant OSC's motion for judgment on partial findings as to LSB's Chapter 541 claims.

## ARGUMENTS AND AUTHORITIES

### I.   Judgment in OSC's Favor is Required Where the Evidence is Insufficient to Support LSB's Claim of Violation of, or Knowing Violation of, Chapter 541 of the Texas Insurance Code

#### A.   Rule 52 Standards

After a party has been fully heard on an issue during a nonjury trial, if the court finds that the party cannot prevail on the issue and the party's claim or defense cannot be maintained or defeated without a favorable finding on the issue, the court can enter judgment on partial findings against that party on that issue.  *See Geddes v. Northwest Mo. State Univ.*, 49 F.3d 426, 429 n.7 (8th Cir. 1995); *Fairchild v. All American Check Cashing, Inc.*, 815 F.3d 959, 963 n.1 (5th Cir. 2016); FED. R. CIV. P. 52(c).  In ruling on a Rule 52(c) motion, the court does not need to consider the evidence in a light favorable to the nonmovant but may render judgment for the movant if it believes the nonmovant's evidence is insufficient to support its claim or defense. *Geddes*, 49 F.3d at 429 n.7; *see Fairchild*, 815 F.3d at 963 n.1 (Rule 52(c) does not require the district court to draw any inferences in favor of the non-moving party and permits the court to make a determination in accordance with its own view of the evidence).   Rule 52(a)'s requirement of findings of fact and conclusions of law only requires weighing the evidence to determine whether the plaintiff has proven his case.  FED. R. CIV. P. 52(a).  "The credibility determination of witnesses, including experts, is peculiarly within the province of the district court," and courts of appeal give "deference to the findings and credibility choices trial courts make with respect to expert testimony." *League of United Latin American Citizens # 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 123 F.3d 843, 846 (5th Cir.1997).

#### B.   LSB's Alleged Violations of Chapter 541

Within LSB's Second Amended Third-Party Complaint, LSB alleged violations of Chapter 541 of the Texas Insurance Code, including violations of sections 541.060 and 541.061

constituting a producing cause of LSB's damages.  (*See* Dkt. 124, pp.15-17).  LSB alleged unfair

settlement practices, including those found within section 541.060(a)(1).  (Dkt. 124, pp.15-16)

(unfair settlement practices).  LSB also alleged unfair or deceptive act or practice in the business

of insurance, found within sections 541.061(1), 541.061(2), 541.061(3), 541.061(4), and

541.061(5).  (Dkt. 124, pp. 16-17) (misrepresentation of an insurance policy).  Prior to the bench

trial, LSB voluntarily dismissed all claims regarding an alleged failure to indemnify.  (App.-1:62,

72, 165, 216; Dkt. 492:1, 3 (identifying one remaining question: whether OSC violated Chapter

541 when it refused to defend LSB in the underlying lawsuit)).

During the bench trial, LSB proceeded only under alleged theories of misrepresentation

of an insurance policy to deceive LSB into believing there is no coverage owed under the policy,

based on its denial of a defense.  (App.-1:6-8).  LSB contended that with each denial of the duty

to defend, OSC made untrue statements regarding the terms and conditions of the policy, and

failed to disclose material terms and material facts with respect to the defense obligation, in an

attempt to deceive LSB.  (App.-1:11-12).  LSB further contended that OSC made statements in a

manner that was intended to mislead a reasonable prudent person, such as LSB, to a false

conclusion that there was no possibility of coverage and, therefore, no duty to defend.  (App.-

1:12).  And, it contended that OSC made misstatements of fact and law and failed to disclose

facts that would trigger the duty to defend.  (*Id.*).  LSB contended OSC's statements were made

knowingly to deceive LSB.  (*Id.*).

### C.    Governing Texas Law

Section 541.060(a)(1) of the Texas Insurance Code provides:

(a) It is an unfair method of competition or an unfair or deceptive act or practice
in the business of insurance to engage in the following unfair settlement practices
with respect to a claim by an insured or beneficiary:

(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue.

Section 541.061 of the Texas Insurance Code provides:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(4) making a material misstatement of law; or

(5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

TEX. INS. CODE §§ 541.060(a)(1),  541.061.  On a finding by the trier of fact that the defendant knowingly committed the act complained of, the trier of fact may award an amount not to exceed three times the amount of actual damages.  *Id.* § 541.152 (b).  Chapter 541 defines "knowingly" as "actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim for damages under Subchapter D is based."  *Id.* § 541.002(1).

Texas law does not impose statutory penalties on every insurer who is found to have been wrong about coverage.  *See Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.,* 739 F.3d 848, 870 (5th Cir. 2014) (because insurer had reasonable basis for denying insured's claim, common law bad faith and Texas Insurance Code claims fail).  A dispute about whether the claim is factually within the policy's terms does not constitute actionable misrepresentation about the policy itself, and, thus, does not rise to the level of bad faith.  *See Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 446 (Tex. 2012).  Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith.  *Transp Ins Co Moriel*,

879 S.W.2d 10, 17 (Tex. 1994); *Lee v. Catlin Specialty Ins Co*., 766 F.Supp. 2d 812, 818 (S.D. Tex 2011). Texas courts hold that extra-contractual tort claims under the Insurance Code require the same predicate for recovery as bad faith causes of action in Texas.  *Lawyers Title Ins. Co.*, 739 F.3d at 870 (citing *Higginbotham v. State Farm Mut Auto Ins Co.,* 103 F.3d 456, 460 (5th Cir. 1997) (citing *Emmert v. Progressive Cnty. Mut. Ins. Co*., 882 S.W.2d 32, 36 (Tex. App.— Tyler 1994, writ denied), and *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 282 (Tex. App.—San Antonio 1992, writ denied)).  Accordingly, "an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for the denial of that coverage."  *Id.* (citing *Emmert*, 882 S.W.2d at 36).

Whether there is a reasonable basis for an insurer's denial of a claim must be judged, in a bad-faith and Insurance Code violation action, by the facts before the insurer at the time the claim was denied.  *See Ruttiger*, 381 S.W.3d at 446; *Republic Ins. Co. v. Stoker*, 903 S.W.3d 338, 340 (Tex. 1995) (citing *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990)).  It is an "objective determination" involving whether "a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." *Stoker,* 903 S.W.3d at 340. So long as a reasonable basis for denial of the claim exists, the insurer will not be subject to liability for an erroneous denial of a claim.  *Id.*

D. **Weighing the Evidence, LSB Failed to Prove, by a Preponderance of the Evidence, A Violation of, or a Knowing Violation of, Chapter 541**

A review of the bench trial evidence in light of the governing law reveals LSB presented insufficient evidence to support a finding of violation of Chapter 541 of the Texas Insurance Code.  Applying the law to the evidence, this Court should render judgment in favor of OSC on LSB's remaining claim of alleged violation and knowing violation of Chapter 541.

1.      *A Review of the Evidence*

    a.      **Mr. Keith Nye: Contractual Liability Exclusion Was the Primary Reason OSC Denied LSB's Tender of Defense and OSC Had a Reasonable Basis for its Denials**

**Background.**  Mr. Nye testified that he is an assistant vice president of claims with OSC. (App.-1:100).  He is part of the coverage committee.  (*Id.*).  With respect to the denial of defense to LSB, the president, executive vice-presidents, and vice-presidents at his level were involved in the decision to deny a defense to LSB.  (App.-1:100-01).  For approximately 10-15 years, Mr. Nye has handled liability claims related to commercial liability policies similar to the complexity of the policy issued to A.D. Willis ("Willis").  (App.-1:101).  The coverage committee has expertise in the field regarding coverage under this type of policy, and OSC stipulated that those who dealt with this claim on behalf of OSC were very experienced, with many years of claims handling.  (App.-1:102, 106).  Mr. Nye handled more than one hundred construction defect claims a year.  (App.-1:103).  Part of Mr. Nye's responsibility was to keep abreast of the laws and changes in the law.  (App.-1:105).

Regarding this claim, Mr. Nye testified that the claim was unusual in that OSC's primary focus of business was homebuilders, but this involved a commercial building.  (App.-1:105). The first person assigned to the tender was Mr. Claude Husbands, who reviewed it in light of the terms and conditions of the policy.  (App.-1:107).  If he had questions, he would elevate those to people he could talk to, including his supervisor, Ms. Caroline Goodspeed; Mr. Husbands' recommendation was reviewed and approved by Ms. Goodspeed, the executive committee, and the branch manager.  (App.-1:107-08).

**Primary Reason Supporting Denial:  Exclusion 2.b.** The record demonstrates that the evolving law interpreting the contractual liability exclusion[2] played a large role in OSC's decision to deny LSB a defense.  **When asked _by this Court_** what, in the witness's mind, was the dispositive variable or dispositive factor that made LSB's claim outside of coverage, Mr. Nye made clear that, at the time of the denials, the law was different than it was at the time of trial on the issue of the contractual liability exclusion, Exclusion 2.b. within OSC's policy.  (App.-1:110; _see also_ 123, 134-35).  When this Court again questioned him, Mr. Nye testified that Exclusion 2.b. was the "absolute door-slammer," which clearly meant no coverage is available.  (App.-1:134).  There had been cases, including several his company had been involved in, where the contractual liability exclusion was dispositive of coverage.  (App.-1:110).  Mr. Nye further testified that Willis' obligation to Swinerton arose from the contract Willis had with Swinerton, and, but for that contract, Willis would not have been sued.  (App.-1:110, 148, 149, 150, 156-58,

---

[2]     The contractual liability exclusion is found in OSC's policy at Exclusion 2.b., and provides:

**2.  Exclusions**

This insurance does not apply to:

* * *

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  The exclusion does not apply to liability for damages:

(1)  That the Insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. . . .

(App.-4:369) (emphasis added).

172, 173-74, 195).  He explained the contractual liability exclusion involved the Texas Supreme Court's decision in the *Gilbert*[3] and *Ewing*[4] cases.  (App.-1:111).

On further questioning by LSB, Mr. Nye testified that the case law addressing Exclusion 2.b. was a material factor in the committee's decision to deny a defense.  (App.-1:149).  Based on OSC's understanding of the case law, the fact that the negligence causes of action were alleged in the underlying lawsuit did not warrant a duty to defend.  (App.-1:172).  Mr. Nye testified that the policy's exception to the exclusion (the exclusion does not apply to liability for damages that the insured would have in the absence of a contract) had been addressed in cases (one of them a Mid-Continent case) at the trial court and appellate levels, where underlying claims of negligence were asserted, but the contractual liability exclusion nonetheless applied. (App.-1:150, 174).  Because of the case law existing before *Ewing*, OSC had denied a defense based on Exclusion 2.b.  (App.-1:157).

Thus, according to Mr. Nye, at the time of the denials, OSC understood that Texas law interpreting its Exclusion 2.b. would preclude coverage in this case, where Willis' obligation to LSB and to rectify the damages arose from the contract that Willis had, and, but for that contract, Willis would not be involved.  (App.-1: 110, 123, 148, 149, 150, 156-58, 172, 173-74, 195).  The subcontract between LSB and Willis was an "insured contract" only insofar as Willis was concerned; it was not an "insured contract" for LSB.   (App.-1:148).   Based on OSC's understanding of Texas law at the time it issued its denials, the existence of an "insured contract" would not preclude reliance on Exclusion b. to deny a defense to LSB in the Underlying Lawsuit. (App.-1:149, 150, 156-58, 172, 173-74, 195).  And, based on OSC's understanding of Texas law

---

[3]     *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010).

[4]     *Ewing Const. Co., Inc. v. Amerisure Ins. Co*., 814 F. Supp. 2d 739, 741 (S.D. Tex. 2011), *vacated*, 744 F.3d 917 (5th Cir. 2014). (holding that contractual liability exclusion operated to preclude coverage and duty to defend).

at the time it issued its denials, the inclusion of negligence claims within the Underlying Lawsuit would not trigger an exception to Exclusion 2.b.  (App.-1:149, 150, 156-58, 172, 173-74, 195)

**Endorsement 1357.**  When questioned about the additional insured endorsement 1357,[5] Mr. Nye also made clear that, under the separation of insureds, as an additional insured, LSB was still bound by the terms and condition of Willis' policy, and its Exclusion 2.b.  (App.-1:180-81, 201).  He testified there was no duty to defend based on endorsement 1357.  (App.-1:182).  As to this endorsement, OSC took into consideration all the case authority (discussed below) when it denied a defense.  (App.-1:201).

**OSC's Reasonable Basis for Denial.**  During his direct examination, Mr. Nye testified that, in determining the duty to defend, OSC looks at the policy exclusions.  (App.-1:183).  This is because OSC's policy, (App.-4), provides that OSC will "have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply."  (App.-1:183-84; App.-4:368).

Under the additional insured endorsement 1357, LSB is an insured under the OSC policy.  (App.-1:184).  As such, LSB would be subject to all the exclusions and conditions contained in the policy.  (App.-1:185).

---

[5]     The Additional Insured Endorsement 1357 provides, in relevant part:

> 1.  **WHO IS AN INSURED** (Section II) is amended to include as an insured the person or organization shown in the Schedule [Lyda Builders & its parent & affiliated companies], but only with respect to liability directly attributable to your performance of "your work" for that insured.
>
> **. . .**
>
> This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

(App.-4:356) (emphasis added).

To explain OSC's state of mind at the time of each of the denials, Mr. Nye testified about Exclusion 2.b. and what OSC knew as the Texas courts interpreted that provision over time.  Mr. Nye testified in conjunction with the timeline of events concerning the filing of the underlying lawsuit and third-party petitions, tender of defense, response to those tenders, OSC's denial letters, and the filing of the coverage lawsuit.[6]

Mr. Nye explained that the original petition was filed in the underlying lawsuit on **February 12, 2008** (App.-5:421-28), and on **January 13, 2011**, a district court opinion issued in the ***Crownover***[7] case by a federal judge in Dallas.  (App.-1:188; App.-3:287).  *Crownover* issued *prior to the tender of the underlying lawsuit by LSB* (App.-1:190; App.-3:287), involved the application of Exclusion 2.b., and tort allegations such as implied warranties existed there. (App.-1:188-189).  It involved Mid-Continent and was one of their cases.  (App.-1:190).

LSB filed the third-party petition against Willis (App.-6:429-434) on **April 21, 2011**. (*Id.*; App.-3:287).  On **April 28, 2011**, the district court rendered the opinion in ***Ewing***, and Mr. Nye confirmed OSC was informed of the holding.  (App.-1:190, App.-3:287, App.-20:598-610). *Ewing* was a duty to defend case, and the underlying lawsuit alleged breach of contract and negligence.  (App.-1:190-191, App.-20:607-08).  Mr. Nye understood that, in *Ewing*, the court rendered summary judgment for Amerisure on the duty to defend with respect to Exclusion 2.b. (App.-1:191, App.-20:608).

On **August 18, 2011**, some three and a half years after the lawsuit had been filed against LSB, *LSB tendered* the underlying lawsuit to Willis (App.-1:192, App.-7:435-440), and on the

---

[6]     The timeline, a demonstrative aid, was emailed to the Court during trial proceedings.  (App.-1:191; App.-3).

[7]     *Crownover v. Mid-Continent Cas. Co.*, No. 3:09-CV-2285-O, 2011 WL 13121358 (N.D. Tex. Jan. 13, 2011) **(App.-17:565-572)**, *aff'd*, 757 F.3d 200 (5th Cir. 2014) **(App.-18:573-582)**, *opinion withdrawn and superseded on reh'g*, 772 F.3d 197 (5th Cir. 2014) **(App.-19:583-597)** *and rev'd and remanded*, 772 F.3d 197 (5th Cir. 2014). (holding that the contractual liability exclusion operated to preclude coverage and duty to defend).

same day tendered the petition to OSC.  (App.-1:192, 198-199; App.-3:287; App.-8:441-447).

Willis never tendered the lawsuit to OSC.  (App.-1:192).  About two months later, on **October 11, 2011**, OSC issued its first denial letter, sent by Mr. Husbands.  (App.1:192; App.-10:462-70).

At the time of that denial, OSC knew of the *Crownover* district court decision and the *Ewing* district court decision.  (App.1:193).  Mr. Nye was not aware of any other decisions interpreting Exclusion 2.b. under general liability policies.  (*Id.*).

On **November 17, 2011,** the first amended petition was filed against LSB in the underlying lawsuit.  (App.-1:193; App.-3:287; App.-11:471-481).

On **June 15, 2012**, the Fifth Circuit issued its first opinion in the *Ewing* case.[8]  Mr. Nye testified he was aware that, in that opinion, the Fifth Circuit held the district court correctly decided the duty to defend (*i.e.*, that the contractual liability exclusion operated to preclude coverage and the duty to defend).  (App.-1:193; App.-3:287).

On **July 6, 2012**, LSB tendered the first amended petition filed in the underlying lawsuit. (App.-1:193; App.-3:287; App.-11:471-481).

On **August 5, 2012**, LSB sued OSC in the coverage suit. (App.-1:193; App.-3:287; Dkt. 1 (showing date filed as June 12, 2012)).  Mr. Nye testified that by the time the coverage lawsuit was filed against OSC, OSC had the district court opinions in *Crownover* and *Ewing*, as well as the Fifth Circuit opinion in *Ewing*, holding the contractual liability exclusion operated to preclude coverage and there was no duty to defend.  (App.-1:193-94; App.-3:287).

---

[8]      *Ewing Const. Co., Inc. v. Amerisure Ins. Co*., 814 F. Supp. 2d 739, 741 (S.D. Tex. 2011) **(App.-20:598-610)**, *aff'd in part,* 684 F.3d 512   **(App.-21:611-623)** (holding that contractual liability exclusion operated to preclude coverage and duty to defend), *opinion withdrawn and superseded,* 690 F.3d 628 (5th Cir. 2012), *certified question accepted* (Aug. 24, 2012), *certified question answered,* 420 S.W.3d 30 (Tex. 2014) **(App.-23:624-631)**.

On **August 8, 2012**, the Fifth Circuit issued a certification order to the Texas Supreme Court, requesting the Supreme Court interpret the contractual liability exclusion.  (App.-1:194; App.-3:287).

On **September 13, 2012**, OSC issued its second denial letter to LSB.  (App.-1:194; App.-3:287; App.-12:482-489).  That denial letter listed Exclusion 2.b. as one of the bases for denial of the duty to defend.  (App.-1:194).

On **October 13, 2012**, a second amended petition is filed in the underlying lawsuit against LSB and the subcontractors, including Willis.  (App.-1:194; App.-3:287; App.-13:490-501).  That petition was tendered to OSC on **October 21, 2012.**  (App.-1:194; App.-3:287).

On **January 15, 2013**, OSC issued a third denial letter to LSB.  (App.-1:194-95; App.-3:287; App.-14:502-508).  Mr. Nye confirmed that, at that time, OSC still had the district and Fifth Circuit opinions in *Ewing*, as well as the district court opinion in *Crownover.*  (App.-1:195).

In **October 2013**, the underlying lawsuit settled.  (App.-1:195; App.-3:287).

On **January 7, 2014**, the Supreme Court of Texas reversed the Fifth Circuit's first opinion in *Ewing.*  (App.-1:195; App.-3:287; App.-22:624-631).  Mr. Nye testified that, after OSC learned of the reversal of *Ewing* by the Texas Supreme Court, OSC attempted to settle the coverage case with LSB, but LSB increased its demand.  (App.-1:195).

Mr. Nye further testified that Willis' other insurer, CNA, initially denied coverage but later assumed a defense.  (App.-1:196).

On **June 27, 2014**, the Fifth Circuit issued its opinion in *Crownover*, affirming the denial of coverage on Exclusion 2.b., even though there was a tort claim.  (App.-1:196-197; App.-3:287; App.-18:573-582).  But on motion for rehearing, on **October 29, 2014**, the Fifth Circuit reversed its prior decision in *Crownover.*  (App.-1:197; App.-3:287; App.-19:583-597).

Mr. Nye explained that, when trying to make claims decisions on coverage, OSC tries to follow the most current law, which sometimes is a court of appeals, such as the Fifth Circuit. (App.-1:197).  The Court understood that Mr. Nye had no way of knowing, in *Ewing*, whether the Supreme Court of Texas would take the certified question.  (App.-1:197).

Regarding the multiple grounds stated within the denial letters, Mr. Nye testified that it is the policy at OSC to try to list every potential basis for which coverage may not exist, to be as thorough as possible.  (App.-1:198).  This has been the practice at every insurance company he has worked for in over 30 years.  (*Id.*).  Mr. Nye was never advised by LSB why, if coverage was so clear, that it waited three and a half years to tender the lawsuit to OSC.  (App.-1:199).

> **b.   OSC's Expert Mr. Huddleston: It Was Not Unreasonable for OSC to Deny a Defense Based on Contractual Liability Exclusion Interpretations by Texas Courts**

The Court also had before it PX-267, the expert report of OSC's expert, Mike Huddleston, who explained that all three denial letters issued by OSC cited the Willis Policy's contractual liability exclusion, among others, as grounds for denial.  (App.-15:509-540, 519). Mr. Huddleston further explained the 2010 Texas Supreme Court opinion in *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*,[9] which held that the standard contractual liability exclusion excluding coverage for bodily injury or property damage for which an insured was required to pay damages by reason of the "assumption of liability in a contract or agreement" barred coverage when a contractor assumed liability for damages in a contract, not just when a contractor assumed liability of a third party through a contract.  (App.-15:520).[10]

---

[9]   327 S.W.3d 118 (Tex. 2010).

[10]   (Citing 327 S.W.3d at 126).

Mr. Huddleston stated that this opinion was widely perceived in the insurance industry in Texas as a potential game changer as far as coverage for contractors was concerned.  (*Id.*).

Mr. Huddleston stated that, after *Gilbert*, insurers were far more likely to deny defense and indemnity for contractors based on the contractual liability exclusion (Exclusion 2.b) and Texas state and federal courts struggled to determine how broadly *Gilbert* should apply.  (*Id.*).

Mr. Huddleston discussed the timeline for issuance of *Ewing*:  (1) the district court broadly interpreted *Gilbert*, holding the contractual liability exclusion applies when an insured has entered into a contract and, by doing so, has assumed liability for its own performance under that contract; (2) the Fifth Circuit's initial *Ewing* opinion affirming the district court, its certification to the Texas Supreme Court based on uncertainties associated with *Gilbert*; and (3) the Texas Supreme Court's opinion answering "no" to the first certified question.[11]  (App.-15:520-521).

Mr. Huddleston concluded that because the *Gilbert* opinion left the state of Texas law in flux, it was not unreasonable for OSC to have relied upon the contractual liability exclusion – in conjunction with other cited exclusions – to deny coverage and defense.  (App.-15:521).

Mr. Huddleston addressed each statutory claim asserted by LSB, to conclude there was no violation of the Texas Insurance Code and OSC had a reasonable basis to deny coverage and defense to LSB.  (App.-15:521-523).  He opined that: (1) an insurance carrier has a right to

---

[11]     The certified questions included:

(1)     Does a general contractor that enters into a contract in which it agrees to perform its construction work in a good and workmanlike manner, without more specific provisions enlarging this obligation, "assume liability" for damages arising out of the contractor's defective work so as to trigger the Contractual Liability Exclusion?

(2) If the answer to question one is "Yes" and the contractual liability exclusion is triggered, do the allegations in the underlying lawsuit alleging that the contractor violated its common law duty to perform the contract in a careful, workmanlike, and non-negligent manner fall within the exception to the contractual liability exclusion for "liability that would exist in the absence of contract"?

contest debatable claims, and stating a position on policy obligation is not actionable as a misrepresentation or improper under Texas law; (2) OSC took a position on its contract which it is entitled to do as a matter of industry; and (3) there was no detrimental reliance on any alleged misrepresentation because LSB was sophisticated, had its own counsel, and could readily determine whether the policy was being properly quoted or referred to by OSC in its denial letters. (*Id.*).

### c. John Capener: Disagreed with OSC's Coverage Determinations

Mr. Capener testified he is the senior vice-president, and chief administrative officer for Swinerton, Inc. (App.-1:32). As part of his duties, he directed the insurance procurement for LSB. (*Id.*). LSB is a commercial general contractor in the State of Texas. (App.-1:33). LSB requires subcontractors to secure additional coverage. (App.-1:34). If a claim arises out of a subcontractor's work, LSB believes the subcontractor's insurance is primary and LSB's own insurance is excess. (App.-1:36). Mr. Capener has a working knowledge of how coverage and exclusions typically apply regarding the duty to defend. (App.-1:38).

The OSC policy's additional insured endorsements met LSB's requirements under its subcontractor agreement with Willis. (App.-1:38). LSB was identified as an additional insured party on the additional insured endorsement. (App.-1:39). Mr. Capener explained his understanding of the duty to defend. (App.-1:42-43). He discussed the petitions filed and tenders of the lawsuit Adams Development filed against LSB, and the OSC denials letters. (App.-1:51-55). He stated that, with the OSC denial (App.-10), LSB began to pay for its own defense fees and costs. (App.-1:55).

Mr. Capener stated he understood that Willis assumed the liability of LSB to the extent LSB had liability for the negligence of Willis. (App.-1:56). In his mind, this met the contractual

insured contract requirements.  (*Id.*).  He understood that, in addition to contract claims in the underlying lawsuit, there were negligence claims made; he believed this created an exception to the contractual liability exclusion in the OSC policy. (App.-1:57).

Regarding the contractual liability exclusion, b.(1), Capener believed the potentiality of coverage existed if there was a claim of negligence or tort liability made by Adams.  (App.-1:58-59).  Regarding the two exceptions to the contractual liability exclusion, he believed allegations of LSB's negligence in failing to supervise Willis were covered, based on Willis' deficient work.  (App.-1:59-60).  And, he identified in the subcontract Willis' assumption that would fall within exception b.(2).  (App.-1:60).  When asked whether OSC was misstating policy provisions based on its denials, he testified only that he disagreed with OSC's denial.  (App.-1:60-61).

Concerning OSC's second denial (App.-12:482-489), made after the first amended petition was filed, Mr. Capener also disagreed with the denial.  (App.-1:69).  He also reviewed the denial based on the second amended petition (App.-14:502-508).

The underlying lawsuit ultimately settled with mediation; all the AI carriers did not provide a defense, but all, except OSC, participated in settlement.  (App.-1:72).  The settlement amount was less than the coverage available to LSB.  (App.-1:83).

Over the years, OSC and LSB had general discussions regarding settlement, but the numbers offered did not even cover the legal costs.  (App.-1:88).  Mr. Capener agreed that LSB demanded $375,000, but he did not recall that it withdrew that demand and increased it to $1 million.  (App.-1:96-97).

### 2. *Insufficient Evidence OSC Violated or Knowingly Violated Chapter 541*

Examining whether there is a reasonable basis for OSC's denial of defense and coverage to LSB must be judged by this Court by the facts before OSC at the time of each denial.  *Stoker*, 903 S.W.3d at 340.  Texas law does not impose statutory penalties on an insurer found to have

been wrong about coverage, so long as the insurer has a reasonable basis for denying the insured's claim. *See Lawyers Title Ins. Co.*, 739 F.3d at 870. OSC had a reasonable basis for denying LSB's defense and coverage, as the evidence discussed above shows. Indeed a reasonable insurer under similar circumstances would have denied LSB's claim based on the status of the law interpreting  the contractual liability exclusion at the time of each denial.

The record demonstrates that the unambiguous and dispositive variable or factor that made LSB's claim outside OSC's coverage responsibility was Exclusion 2.b., based on the evolution of the law. At the time of the denials, OSC understood that Texas law interpreting its Exclusion 2.b. would preclude coverage in this case, where Willis' obligation to LSB and to rectify the damages arose from the contract that Willis had, and, but for that contract, Willis would not be involved. The subcontract between LSB and Willis was an "insured contract" only insofar as Willis was concerned; it was not an "insured contract" for LSB. Based on OSC's understanding of Texas law at the time it issued its denials, the existence of an "insured contract" would not preclude reliance on Exclusion 2.b. to deny a defense to LSB in the Underlying Lawsuit. And, based on OSC's understanding of Texas law at the time it issued its denials, the inclusion of negligence claims within the Underlying Lawsuit would not trigger an exception to Exclusion 2.b.

At the time of the initial tender of the lawsuit to Willis and to OSC, the underlying lawsuit had been on file for over three years. At the time of its first denial, OSC was aware of the district court opinions in *Crownover* and *Ewing*, each holding that the contractual liability exclusion operated to preclude coverage and a duty to defend. OSC understood that *Crownover* also involved tort allegations such as implied warranties and that the underlying lawsuit in *Ewing* alleged both breach of contract and negligence, such that the exception to the exclusion would not be triggered.

At the time of its second and third denials, OSC was aware of the Fifth Circuit's first opinion in *Ewing* which affirmed the district court's interpretation that the contractual liability exclusion operated to preclude coverage and a duty to defend, as well as the Fifth Circuit's subsequent certification order to the Texas Supreme Court.  Still existing, however, were the district court opinions in *Crownover* and *Ewing* and OSC had no way of knowing what the Texas Supreme Court would do in *Ewing*.  At the time LSB filed its coverage lawsuit against OSC and others, OSC had the district court opinions in *Crownover* and *Ewing*, as well as the Fifth Circuit's opinion in *Ewing* holding no duty to defend based on the contractual liability exclusion.

It was not until after OSC's third denial that the underlying lawsuit settled.  Months later, the Texas Supreme Court reversed the *Ewing* interpretation.  With that reversal, OSC then attempted to settle the coverage dispute with LSB, but LSB increased its demand from $375,000 to $1 million and no settlement was reached.  Thereafter, the Fifth Circuit issued its first opinion in *Crownover* (affirming the district court's interpretation), but later, on rehearing, reversed.

OSC's expert agreed that the interpretation of the contractual liability exclusion was in a state of flux during the time of OSC's three denials, and it was not unreasonable for OSC to have relied on the contractual liability exclusion in denying a defense to LSB.  While OSC took a position on its contract, it was entitled to do so as a matter of industry practice.  And, there is no evidence of detrimental reliance by LSB, who is a sophisticated insured with retained coverage counsel during the entire period.  Indeed, LSB was being defended in the underlying lawsuit by its own insurer.

Although Capener (who admitted he is not an expert in insurance) disagreed with OSC's coverage position or that OSC acted reasonably in relying on the legal authority addressing the contractual liability exclusion, this represents a bona fide dispute about OSC's obligations under its policy that does not rise to the level of bad faith or statutory violation.  *See Moriel*, 879

S.W.2d at 17; *Thompson v. Zurich Am. Ins. Co.*, No. A–09–CA–493–SS, 2010 WL 3784204, *9,

*11 (W.D. Tex. Sept. 21, 2010).   (App.-23).   Indeed, the evidence demonstrates a dispute

between the insured and the insurer regarding whether a claim falls within the policy coverage—

under Texas law, this does not rise to the level of a misrepresentation.  *See Ruttiger*, 381 S.W.3d

at 446.

Finally, there is no evidence OSC misrepresented its policy "knowingly."  There is no

evidence that OSC was actually aware of the falsity, unfairness, or deceptiveness of its denial

based on the contractual liability exclusion.  Rather, OSC acted in accordance with industry

practice, attempted to be thorough in its analysis of the current status of the law, and it stayed

abreast of the law as it evolved.  It applied the law applicable at the time in consideration of each

of the tenders of the underlying petitions and in issuing its three denial letters.  Based on that

law, OSC testified it denied LSB's defense and coverage for the underlying lawsuit.

In sum, reviewing the evidence relevant to each theory LSB asserted as a basis for OSC's

liability for a statutory violation, the record demonstrates a bona fide coverage dispute, and that

OSC had a reasonable basis to deny LSB a defense based on the contractual liability exclusion.

Indeed, at the time each of the denial letters were sent, in relying on the contractual liability

exclusion, OSC made no misrepresentation to LSB of any material fact or policy provision, made

no untrue statements of fact or law regarding its policy or its policy obligations, made no

material misstatement of law, made no omission of material facts, and made no statement in a

manner to mislead a reasonably prudent person like LSB to a false conclusion about OSC's

policy obligations. Thus, there is no evidence or there is insufficient evidence to support a

finding of violation of Chapter 541, sections 541.060(a) (regarding any OSC misrepresentation

of a material fact or policy provision relating to coverage at issue) and 541.061, that:

(1) OSC misrepresented its insurance policy to deceive LSB into believing there is no coverage owed under the policy, based on its denial of a defense;

(2) With each denial of the duty to defend, OSC made untrue statements regarding the terms and conditions of the policy, and failed to disclose material terms and material facts with respect to the defense obligation, in an attempt to deceive LSB;

(3) OSC made statements in a manner that was intended to mislead a reasonable prudent person, such as LSB, to a false conclusion that there was no possibility of coverage and therefore, no duty to defend;

(4) OSC made misstatements of fact and law and failed to disclose facts that would trigger the duty to defend; or

(5) OSC's statements were made knowingly to deceive LSB.  OSC is entitled to judgment in its favor on this claim.

**E.    Conclusion**

This Court should grant OSC's motion for judgment on partial findings, based on the insufficiency of the evidence of: (1) any misrepresentation or knowing misrepresentation by OSC constituting an unfair or deceptive act or practice in the business of insurance under Texas Insurance Code sections 541.060(a)(1) or 541.061; (2) any knowing misrepresentation by OSC of its insurance policy to deceive LSB into believing there is no coverage owed under the policy, based on its denial of a defense; (3) any knowing representation by OSC of untrue statements regarding the terms and conditions of the policy, or knowing failure to disclose material terms and material facts with respect to its defense obligation, in an attempt to deceive LSB; (4) any knowing representation by OSC made in a manner intended to mislead a reasonable prudent person, such as LSB, to a false conclusion that there was no possibility of coverage and therefore, no duty to defend; (5) any knowing misstatements of fact and law by OSC; and (6) any

knowing failure of OSC to disclose facts that would trigger the duty to defend. The Court should render a take-nothing judgment in OSC's favor on LSB's Chapter 541 claim.

**II.    OSC Objects to LSB's Entitlement to Supplemental Attorney's Fees for Appeal**

The second issue this Court indicated the parties should brief is the issue of supplemental attorney's fees for the appeal. OSC reserves the right to object specifically to the right/entitlement of recovery of appellate attorney's fees and the amount which OSC presumes will be addressed in LSB's brief. As a preliminary matter, however, OSC objects to LSB's entitlement to supplemental attorney's fees for appeal, where both OSC and LSB raised substantive issues in their cross-appeals, and where LSB responded to the Texas Supreme Court's opinion in *Ewing* with an abrupt increase in its demand from $375,000 to $1,000,000, leading to this continued coverage litigation, the bench trial, and the cross-appeals. *See, e.g., Amoco Production Co. v. Texas Meridian Res. Expl., Inc.*, 180 F.3d 554 , 673-74 (5th Cir. 1999) (declining to award attorney's fees on appeal where both parties raised substantive issues on appeal and contributed to the disputed issues raised in the litigation and on appeal). The Court should decline to award LSB supplemental attorney's fees for appeal.

### PRAYER

**THEREFORE**, Defendant Oklahoma Surety Company respectfully prays that the Court grant OSC a judgment on partial findings, pursuant to Rule 52(c) of the Federal Rules of Civil Procedure regarding LSB's section 541.060(a)(1) and 541.061 claim of misrepresentation of OSC's insurance policy and render judgment that LSB take nothing on its Chapter 541 claim. Defendant also prays the Court grant it all such other and further relief as this Court deems just.

Respectfully submitted,

**COOPER & SCULLY, P.C.**


By:   /s/R. Brent Cooper                     

        **R. BRENT COOPER**
        Texas Bar No. 04783250
        SDTX Bar No. 18271
        brent.cooper@cooperscully.com
        **DIANA L. FAUST**
        Texas Bar No. 00793717
        SDTX Bar No. 619603
        diana.faust@cooperscully.com

Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Facsimile: (214) 712-9540

**COUNSEL FOR DEFENDANT**
**OKLAHOMA SURETY COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve notice of this filing upon the following:

Mr. Joseph L. Oliva
oliva@morrissullivanlaw.com
Morris Sullivan & Lemkul, LLP
9915 Mira Mesa Boulevard, Suite 300
San Diego, CA 92131
**Counsel for Plaintiff**

Mr. John Grayson
jgrayson@cbylaw.com
Cokinos Bosien & Young
Four Houston Center
1221 Lamar, 16th Floor
Houston, TX 77010
**Counsel for Plaintiff**

/s/ Diana L. Faust
**DIANA L. FAUST**

D/1002211v8